**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CONNIE J. EDMONSON, individually and | : | |
| on behalf of all others similarly situated, | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | NO. 10-4919 |
| LINCOLN NATIONAL LIFE | : | |
| INSURANCE COMPANY, et al., | : | |
| Defendants. | : | |

## MEMORANDUM RE: MOTION TO DISMISS

Baylson, J.                                                                                    April 1, 2011

## I.      Introduction

The issue presented requires examination of "retained asset accounts" and the application

of ERISA principles to this novel but increasingly utilized form of death benefits.  Plaintiff

Connie J. Edmonson, on behalf of herself and others similarly situated, filed a civil action against

Defendants Lincoln National Life Insurance ("Lincoln" or "Defendant") and John Does 1

through 100, seeking equitable relief under Section 502(a)(3) of the Employee Retirement

Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(3).  Presently before the Court is

Defendant Lincoln's Motion to Dismiss for Lack of Jurisdiction Pursuant to Fed. R. Civ. P.

12(b)(1) and for Failure to State a Claim Pursuant to Fed. R. Civ. P. 12(b)(6).

The Defendant's Motion to Dismiss raises several separate grounds.  Initially, the Court

rejects Defendant's argument that the Plaintiff lacks standing.  On the more difficult questions of

ERISA liability, Defendant argues that the case law establishes as a matter of law that under the

ERISA statute, it had discharged any fiduciary duty to the Plaintiff, and also that the fund, as to

which Plaintiff asserts Defendant had a fiduciary duty, was not a "plan asset."

Although Defendant's arguments may have merit, it would be error to grant the Motion to Dismiss. The Court notes substantial Supreme Court and Third Circuit precedent that some factual discovery may be appropriate on the issues of "fiduciary duty" and "plan assets." Plaintiff should be given an opportunity to develop a record on these points by at least inspection of documents and possibly other limited discovery.

There is a paucity of appellate authority on these issues in the context of the facts of this case. The First Circuit held, on somewhat analogous but not exactly the same facts, that Plaintiff may have a claim. Although Judge Baer in the Southern District of New York has ruled in favor of an insurer on other analogous facts, an appeal is pending to the Second Circuit. Although Defendant's Rule 12 Motion will be denied, Defendant may raise its legal issues at the conclusion of discovery, on dispositive motions or, if necessary, at trial.

## II.    Factual and Procedural Background

### A.    Factual Background

#### 1.    *The Parties*

Defendant Lincoln National Life Insurance Company issued group life insurance policies to fund ERISA-governed employee welfare benefit plans ("the plans"). Compl. ¶ 8. Does 1 through 100, inclusive, are indirect or direct subsidiaries of Lincoln, whose identity are unknown to Plaintiff. Compl. ¶ 5. Plaintiff and the proposed members of the class, which has not been certified, are beneficiaries of policies issued by Lincoln. Compl. ¶ 9. Plaintiff's husband, Russell Edward Edmonson, was a participant in an ERISA plan sponsored by Schurz Communications, Inc. ("the plan") for which Lincoln issued a group life insurance policy.

Compl. ¶ 16.  Plaintiff was the life insurance beneficiary under the plan.  Id.

### 2. *The SecureLine Accounts*

Lincoln's method of paying a death benefit of $5000 or more due under the plan was to inform the beneficiary that Lincoln had established a "SecureLine account" through Northern Trust Company in the beneficiary's name containing the life insurance proceeds.[1]  Compl. ¶ 10. Plaintiff alleges that Lincoln did not actually deposit funds in a SecureLine account until the beneficiary drew a draft on the account, meanwhile retaining and investing the proceeds.  Compl. ¶¶ 11-12.  Lincoln earned more money by managing and investing the death benefits owed to any beneficiary than Lincoln paid in interest to the beneficiary in connection with the SecureLine account.  Compl. ¶ 13.

### 3. *Plaintiff's Claim*

Following her husband's death, Plaintiff submitted her Life Claim Form (Compl. Ex. A) to Lincoln on March 30, 2009 to claim the benefits owed to her under the plan.  Compl. ¶¶ 17-18. The Life Claim Form stated that benefits would be paid via a SecureLine account, which "gives you complete control of your funds" and on which the account holder "may write checks for any amount over $250 and up to your full balance at any time" without fees.  Compl. Ex. A at 2.  On April 9, 2009, Plaintiff received a letter from Lincoln (Compl. Ex. B), explaining that a SecureLine account was established in Plaintiff's name for $10,000, those funds were secure and

---

[1] The SecureLine account is a type of account known in industry parlance as a "retained asset account."  See Financial Institution Letters, "Retained Asset Accounts and FDIC Deposit Insurance Coverage," FIL-48-2010 (Aug. 11, 2010), http://www.fdic.gov/news/news/financial/2010/fil10048.html ("A retained asset account is an insurance company product in which the beneficiary of a life insurance policy receives proceeds in the form of an account provided by the insurance company in lieu of a lump sum payment.").

earning interest, and Plaintiff would receive a checkbook giving her access to the funds. Compl. ¶¶ 19-20. Plaintiff also received a SecureLine Certification of Confirmation, which showed that the opening balance of her SecureLine account was $10,000, and that the interest rate was "1.76% (subject to change monthly)" (Compl. Ex. C)[2]; a statement of Terms and Conditions of the SecureLine account (Compl. Ex. D); and a brochure describing features of the SecureLine account (Compl. Ex. E). Compl. ¶¶ 21-22. Both the Terms and Conditions and the brochure explained that the SecureLine account "starts earning interest the day the account is opened" at a "minimum rate . . . equal to the national average for interest bearing checking accounts as published daily by Bloomberg, plus 1%." Compl. Ex. D at 1; Compl. Ex. E at 3.

Plaintiff alleges that despite the notification that Lincoln transferred proceeds into a SecureLine account, Lincoln did not initiate a transfer of funds to the account at that time. Compl. ¶¶ 22-23. Rather, Lincoln invested the death benefits for its own account, and earned more interest on the investment than it paid to Plaintiff. Compl. ¶ 24.

### B.   Procedural Background

On the basis of these allegations, Plaintiff filed suit on September 21, 2010, alleging in one count that Defendants breached their fiduciary duty under ERISA. Plaintiff contends that Defendant Lincoln's retention of the "spread"–i.e., the difference between the interest that Lincoln earned on the death benefits in the SecureLine account and the interest paid to Plaintiff–was unjust enrichment. Compl. ¶ 28. Plaintiff's claim arises under two provisions of ERISA: 29 U.S.C. § 1104(a), which requires a fiduciary to act solely in the interest of plan

---

[2] The Certificate states, in an apparent error, that Connie Edmonson is both the deceased and the beneficiary.

participants and beneficiaries and for the exclusive purpose of providing benefits to participants and beneficiaries; and 29 U.S.C. § 1106(b)(1), which prohibits fiduciaries from self-dealing in ERISA plan assets.  Compl. ¶ 26.

Plaintiff requests the following relief: a) an order certifying the claims of herself and others similarly situated, appointing Plaintiff as the class representative and Plaintiff's counsel as Class counsel; b) a declaratory judgment that Defendant was unjustly enriched, that Defendant holds the plaintiff beneficiaries' interest in constructive trust, and directing disgorgement; c) disgorgement and equitable distribution of the funds held in constructive trust; d) attorney's fees, expenses and costs; and e) further just and proper relief.[3]

Defendant Lincoln filed its Motion to Dismiss for Lack of Jurisdiction Pursuant to Fed. R. Civ. P. 12(b)(1) and for Failure to State a Claim Pursuant to Fed. R. Civ. P. 12(b)(6) on November 29, 2010 (ECF No. 24).  Lincoln filed with the Motion a plan document, the Group Insurance Policy No. 000010106793 issued to Schurz Communications, Inc., revised and dated January 1, 2009, under which Plaintiff was a beneficiary.  Mot. Dismiss. Ex. 1.  Lincoln also filed a screenshot of Plaintiff's claim number 1090060098.  Mot. Dismiss. Ex. 2.  The screenshot shows that Lincoln received Plaintiff's claim on April 6, 2009; Plaintiff's claim status is "closed"; Plaintiff's claimed benefit, in the amount of $10,000.00 plus $138.08 interest, was accepted; and Plaintiff was approved to receive a check on June 8, 2009.  Id.  Plaintiff did not object to either of these documents at oral argument.  Defendant also filed a declaration by its officer, Joseph Serino, that the policy document and the screenshot are "objective documentary

_____

[3] Plaintiff withdrew her prayer for injunctive relief in her response to the motion to dismiss.  Pl.'s Resp. at 6 n. 4.

evidence that is incorporated by reference in, or integral to the claims asserted in, Plaintiff's Class Action Complaint." Declaration of Joseph Serino ¶ 2, Nov. 29, 2010.

Plaintiff filed her Response in Opposition on January 7, 2011 (ECF No. 26), and Lincoln filed a Reply on January 21, 2011 (ECF No. 27). The Court held a hearing with counsel for both parties on February 3, 2011, and requested letter briefs about supplemental authorities from the Third Circuit and the production of plan documents. In a letter to the court dated February 24, 2011 (ECF No. 35), Plaintiff's counsel represented that Defendant's counsel had provided two additional documents related to the plan, that they had found no plan document with terms different from those in the policy, and concluded that no additional discovery was necessary at the motion to dismiss stage. Defense counsel concurred in a February 24, 2011 letter (ECF No. 36) that the group life policy attached to Lincoln's Motion to Dismiss was the only plan document in Lincoln's possession related to this case.

## III.    The Parties' Contentions

### A.    Defendant Lincoln's Contentions

Defendant argues that Plaintiff lacks standing to bring the claim, and alternatively, even if Plaintiff has standing, the Motion to Dismiss should be denied. With respect to standing, Defendant first argues that Plaintiff does not satisfy the threshold constitutional standing requirement of showing a redressable injury in fact. Defendant also argues that Plaintiff does not have standing as a beneficiary under ERISA because Plaintiff already received all of the benefits to which she was entitled.

On the merits, Defendant's primary argument is that Plaintiff cannot state a claim for breach of fiduciary duty because Defendant was not acting as an ERISA fiduciary with respect to

the investment of her death benefits once they were credited to her SecureLine account.

Defendant also contends that it did not owe Plaintiff a fiduciary duty because the policy at issue was a "guaranteed benefit policy," or alternatively, the funds at issue were not "plan assets." Defendant also argues it could not have breached its fiduciary duty because it complied with the express terms of the plan. Defendant's additional reasons to dismiss Plaintiff's claim are that Plaintiff requests a disgorgement remedy under the equitable relief provision of ERISA, Section 502(a)(3), and that Plaintiff has not alleged likelihood of an injury to the plan as a whole under ERISA Section 406(b)(1).

### B.     Plaintiff's Contentions

Plaintiff asserts that she satisfies the requirements of both constitutional standing and statutory standing. First, Plaintiff has alleged an economic harm that constitutes an injury in fact. Second, Plaintiff is an ERISA beneficiary, even though she cashed out her SecureLine account, because she was entitled to receive all of the interest that Defendant earned on her benefit award.

Plaintiff also disputes Defendant's arguments as to whether she has stated a claim for breach of fiduciary duty under ERISA. In her primary argument, Plaintiff asserts that Lincoln was acting as a fiduciary when it managed Plaintiff's benefits in the SecureLine account. Relatedly, she argues that the guaranteed benefit policy exception does not apply, and that the funds at issue are "plan assets" within the definition of ERISA. Plaintiff also asserts that Defendant's compliance with the plan is not tantamount to compliance with ERISA because Defendant engaged in self-dealing. In addition, Plaintiff contends that the disgorgement remedy she seeks is equitable restitution. Plaintiff asserts that there is no required "injury to the plan" element for a Section 406(b)(1) claim, but even if there were, she has made that showing.

**IV.** **Legal Standards**

    **A.** **Jurisdiction**

Plaintiff's claim arises under the federal ERISA statutory scheme. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e)(1).

    **B.** **Standard of Review for Rule 12(b)(1) Motion to Dismiss**

The district court should grant a motion to dismiss for lack of subject matter jurisdiction because of the inadequacy of a federal claim "only when the claim is 'so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy.'" Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 89 (1998) (quoting Oneida Indian Nation of N.Y. v. County of Oneida, 414 U.S. 661, 666 (1974)). The district court may exercise subject matter jurisdiction over the claim "if 'the right of the petitioners to recover under their complaint will be sustained if the Constitution and laws of the United States are given one construction and will be defeated if they are given another,' . . . unless the claim 'clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous.'" Id. at 89 (quoting Bell v. Hood, 327 U.S. 678, 682-83, 685 (1946)) (internal citation omitted).

There are two categories of Rule 12(b)(1) motions. A facial attack "concerns 'an alleged pleading deficiency.'" CNA v. United States, 535 F.3d 132, 139 (3d Cir. 2008) (quoting United States ex rel. Atkinson v. Pa. Shipbuilding Co., 473 F.3d 506, 514 (3d Cir. 2007)). A factual attack "concerns 'the actual failure of [a plaintiff's] claims to comport [factually] with the jurisdictional prerequisites.'" Id. (alteration in original) (quoting Atkinson, 473 F.3d at 514).

On a facial attack, the district court considers "'whether the allegations on the face of the

8

complaint, taken as true, allege facts sufficient to invoke the jurisdiction of the district court.'" Taliaferro v. Darby Twp. Zoning Bd., 458 F.3d 181, 188 (3d Cir. 2006) (quoting Turicentro, S.A. v. Am. Airlines Inc., 303 F.3d 293, 300 (3d Cir. 2002)). A facial attack is akin to a Rule 12(b)(6) motion in that the Court considers the allegations of the complaint as true. Petruska v. Gannon Univ., 462 F.3d 294, 302 n.3 (3d Cir. 2006) (citing Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977)).

By contrast, a defendant who challenges jurisdiction "in fact," as in this case, "contend[s] that the court in fact lacks subject matter jurisdiction, no matter what the complaint alleges." NE Hub Partners, L.P. v. CNG Transmission Corp., 239 F.3d 333, 341 n.7 (3d Cir. 2001) (citing Mortensen, 549 F.2d at 891). There are "three important procedural consequences" of treating a Rule 12(b)(1) motion as a factual attack. CNA, 535 F.3d at 139. The district court (1) does not presume the truthfulness of the allegations in the complaint; (2) places the burden of proof of subject matter jurisdiction on the plaintiff; and (3) has authority to make decisive factual findings. Id.; see also Mortensen, 549 F.2d at 891. The court has "discretion to allow affidavits, documents, and even limited evidentiary hearings" in weighing the evidence on a factual attack. Turicentro, 303 F.3d at 300 n.4. If the party moving to dismiss under Rule 12(b)(1) supports its motion with a sworn statement of facts, the district court must construe the motion as a factual attack. Int'l Ass'n of Machinists & Aerospace Workers v. Northwest Airlines, Inc., 673 F.2d 700, 711 (3d Cir. 1982).

## C. Standard of Review for Rule 12(b)(6) Motion to Dismiss

A claim may be dismissed under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted." A valid complaint requires only "a short and

plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

Generally, the district court may consider only the facts alleged in the complaint and its attachments on a motion to dismiss. <u>Jordan v. Fox, Rothschild, O'Brien & Frankel</u>, 20 F.3d 1250, 1261 (3d Cir. 1994). The court may also take into consideration "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." <u>Pension Benefit Guar. Corp. v. White Consol. Indus.</u>, 998 F.2d 1192, 1196 (3d Cir. 1993).

The Third Circuit held that a district court should conduct a two-part analysis to determine whether a claim survives the Rule 12(b)(6) motion. <u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 210 (3d Cir. 2009). First, the court distinguishes between the factual and legal elements of the claim. <u>Id.</u> at 210-11. The district court accepts as true the plaintiff's well-pled allegations and construes the complaint in the light most favorable to the plaintiff. <u>Common Cause of Pa. v. Pennsylvania</u>, 558 F.3d 249, 253 (3d Cir. 2009), <u>cert. denied</u>, 130 S. Ct. 1015 (2009) (citing <u>Lewis v. Atlas Van Lines, Inc.</u>, 542 F.3d 403, 405 (3d Cir. 2008)). The court does not accept as true "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." <u>Fowler</u>, 578 F.3d at 210 (quoting <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009)). Second, the court inquires whether the complaint states a plausible claim to relief. <u>Id.</u> at 211 (citing <u>Iqbal</u>, 129 S. Ct. at 1950). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u> (citing <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 556 (2007)).

## V.      Discussion

When a defendant raises challenges to both subject matter jurisdiction and the merits, "a federal court is generally required to reach the jurisdictional question before turning to the merits." In re Hechinger Inv. Co. of Del., Inc., 335 F.3d 243, 249 (3d Cir. 2003) (citing Steel Co., 523 U.S. at 93-95 (1998)).  Here, Defendant argues that Plaintiff lacks Constitutional standing under Article III because she does not allege a redressable injury in fact, and she lacks statutory standing because she is not a "beneficiary" as defined by ERISA.  The Court first assesses whether Plaintiff has established that she has standing before considering whether Plaintiff has stated a breach of fiduciary duty claim under ERISA.[4]

### A.      Standing

"To bring a civil action under ERISA, a plaintiff must have constitutional, prudential, and statutory standing." Leuthner v. Blue Cross & Blue Shield of Northeastern Pa., 454 F.3d 120, 125 (3d Cir. 2006).  Constitutional standing is a question of the federal court's power to resolve a dispute, while statutory standing requires the Court to interpret "whether Congress has accorded this injured plaintiff the right to sue the defendant to redress his injury." Graden v. Conexant Sys. Inc., 496 F.3d 291, 295 (3d Cir. 2007).  In the ERISA context, prudential standing is "inextricably tied" to the inquiry for statutory standing "of whether a plaintiff can meet the

_____

[4] Defendant Lincoln challenges the court's jurisdiction "in fact," which alters the procedural standards under which a court reviews a 12(b)(1) motion, as discussed above.  Def.'s Mem. Law in Support of Mot. Dismiss 6; Def.'s Reply at 3 n.2.  Consequently, Plaintiff bears the burden of proof to show that she has both constitutional and statutory standing.  Moreover, the Court need not presume the truth of the allegations in the complaint with respect to standing, and may consider evidence outside of the complaint.

definitions of either a 'participant' or 'beneficiary.'"  Leuthner, 454 F.3d at 125.[5]

1.    *Constitutional Standing*

For a dispute to be a justiciable "case" under Article III of the Constitution, the plaintiff must have standing to sue.  Steel Co., 523 U.S. at 102 (citing Whitmore v. Arkansas, 495 U.S. 149, 155 (1990)).  It is a "well established" rule that a plaintiff must have constitutional standing "at the time the suit is commenced and throughout the suit."  Leuthner, 454 F.3d at 127.

In Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992), the Supreme Court set forth the three elements that a party invoking federal jurisdiction must establish for constitutional standing: 1) the plaintiff suffered an "injury in fact"; 2) there is a causal connection between the injury and the conduct complained of; and 3) the injury is likely to be redressed by a favorable decision.  Id. at 560-61 (citations omitted).  The Supreme Court defined "injury in fact" as "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical."  Id. (citations omitted) (internal quotation marks omitted).  A particularized injury "affect[s] the plaintiff in a personal and individual way."  Id. at 560 n.1.  The requirement of a particularized injury applies equally to a plaintiff in a proposed class action.  See Warth v. Seldin, 422 U.S. 490, 501 (1975) ("the plaintiff still must allege a distinct and palpable injury to himself, even if it is an injury shared by a large class of other possible litigants").  To establish an injury in fact, the plaintiff must plead "a colorable claim" to relief, not an entitlement to relief on the merits.  Leuthner, 454 F.3d at 126 n.4.  The Third Circuit has described the injury in fact requirement as a "generous" inquiry as to whether the "plaintiff has alleged some specific, 'identifiable trifle' of injury. . . that is fairly traceable to the

_____

[5] The parties have not raised any arguments concerning prudential standing.

defendant's conduct." Bowman v. Wilson, 672 F.2d 1145, 1151 (3d Cir. 1982) (internal citation omitted).

Constitutional standing "often turns on the nature and source of the claim asserted," because the injury in fact may be the violation of a statutorily-created legal right. See Warth, 422 U.S. at 500. To establish injury in fact on a claim of restitution or disgorgement in the ERISA context, a plaintiff must allege an individual loss. Horvath v. Keystone Health Plan East, Inc., 333 F.3d 450, 456 (3d Cir. 2003). Courts dismiss breach of fiduciary duty claims where the plaintiff makes speculative or generalized allegations about loss. In Horvath, the plaintiff alleged that the ERISA fiduciary's failure to disclose information about cost-control incentives to physicians participating in the healthcare plan diminished the value of the healthcare benefits paid for by her employer. Id. at 452-53. The Third Circuit found that Horvath's diminished value claim was entirely speculative, and that she assumed that her employer would have passed on its savings in full to employees had it overpaid for benefits. Id. at 457. Therefore, Horvath had not alleged individual loss and lacked standing to pursue her claim for equitable relief. Id. at 457 (affirming the district court's grant of summary judgment to defendant). Similarly, in Kendall v. Employees Retirement Plan of Avon Products, 561 F.3d 112 (2d Cir. 2009), the Second Circuit held that merely alleging the defendant employer had failed to execute an ERISA-compliant pension plan was insufficient to show that plaintiff had suffered an individual harm to satisfy the injury in fact requirement. Id. at 120 (affirming the district court's grant of the defendant's motion to dismiss for lack of constitutional standing).

By contrast, a plaintiff adequately alleges an injury in fact on an ERISA breach of fiduciary claim by pleading a personal economic injury. In Patten v. Northern Trust Co., 703 F.

Supp. 2d 799 (N.D. Ill. 2010) (Lefkow, J.), the plaintiff participant alleged that the defendant fiduciaries' failure to prudently manage the ERISA plan resulted in a decline of the plan's overall value. Id. at 806. Judge Lefkow accepted as sufficient the allegation that the individual loss was the "difference between what an appropriate alternative investment would have earned and what the Northern Trust stock did in fact earn." Id. The extent of plaintiff's loss–and whether the earnings may have actually increased on account of the alleged breach–was a question of damages (to be calculated after the benefit of discovery), rather than injury in fact. Id. at 807.

In a case similar to the facts before this Court, Vander Luitgaren v. Sun Life Insurance Co. of Canada, No. 1:09-cv-11410, 2010 WL 4722269 (D. Mass. Nov. 18, 2010) (Gertner, J.), the district court found that an ERISA beneficiary, by alleging that the fiduciary had retained interest on death benefits awarded to him in an individual retained asset account, pleaded a sufficient injury in fact for constitutional standing on a disgorgement claim. Id. at *1. In Jones v. Novastar Financial, Inc., No. 08-00490-CV-W-NKL, 2009 WL 331553 (W.D. Mo. Feb. 11, 2009) (Laughrey, J.), the district court held that the plaintiff's allegations of an individual loss–"an approximately five-dollar drop in stock price due to alleged breaches and alternative investments [t]hat would have performed better"–was sufficient to plead injury in fact on an ERISA breach of fiduciary duty claim premised on the investment of plan assets in the company's common stock. Id. at *5.

Defendant cites Faber v. Metropolitan Life Insurance Co., No. 08-Civ-10588, 2009 WL 3415369, at *4-5 (S.D.N.Y. Oct. 23, 2009), for the proposition that Plaintiff lacks Article III standing on a breach of fiduciary duty claim for disgorgement of excess profits that the ERISA fiduciary earned through reinvestment of beneficiaries' funds. In Faber, the district court held

that the plaintiffs alleged no redressable injury in fact, because they had received the benefits to which they were entitled under the plan, and did not identify a specific pool of assets to which they had a colorable claim. Id. at *5. Plaintiff contends that the Faber court conflated its determination of whether the plaintiffs alleged an injury in fact with entitlement to redress on the merits. Pl.'s Resp. at 8-9. The Court agrees with Plaintiff, and respectfully declines to follow Faber, which imposed too high a burden on a plaintiff with respect to the jurisdictional allegations on a Rule 12(b)(1) motion.

Here, Plaintiff asserts a claim for equitable relief under Section 502(a)(3) for violations of ERISA, specifically for disgorgement.[6] Plaintiff alleged that she suffered an individual loss, measured as the "spread" or difference between the interest that Defendant allegedly earned on the benefits in Plaintiff's SecureLine account, and the interest that Defendant paid to Plaintiff. This is a sufficient allegation of injury in fact, caused by defendant's conduct, that is similar in character to the loss alleged in Jones and Vander Luitgaren. Any determination of the magnitude of Plaintiff's loss is a question of damages that should not be resolved until after discovery, as in Patten. In addition to alleging "injury in fact," Plaintiff has alleged that the financial injury she suffered is causally connected to Defendant's investment of the death benefits, and that the injury is redressable by a favorable judgment and disgorgement of the "spread." Therefore, Plaintiff has sufficiently alleged constitutional standing under Article III.

2. *Statutory Standing*

Defendant also raises a challenge to statutory standing under ERISA Section

---

[6] Plaintiff clarified in her response brief that her desired equitable remedy is disgorgement. Pl.'s Resp. at 6.

502(a)(3)(B), which states: "A civil action may be brought. . . by a participant, beneficiary, or fiduciary. . . to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3) (2010). Relevant to this case is whether Plaintiff is a "beneficiary" within the meaning of ERISA. An ERISA "beneficiary" is "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(8).[7]

There is no dispute that Plaintiff was designated as a beneficiary by her husband, a participant in the ERISA plan sponsored by Schurz Communications, Inc., for which Defendant Lincoln issued the life insurance policy. Rather, the parties dispute whether Plaintiff remains a "beneficiary" at the time of this lawsuit. Defendant argues that because Plaintiff's SecureLine account is closed, Plaintiff no longer "is or may become entitled" to a benefit.

The Third Circuit has not determined that a plaintiff must have statutory standing at the time of filing a lawsuit under ERISA, unlike its position on constitutional standing. Leuthner,

---

[7] The terms "participant" and "fiduciary" are defined as follows:
A "participant" is "any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit." 29 U.S.C. § 1002(7).
A "person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C.A. § 1002(21).

454 F.3d at 126. For example, in a case where a plaintiff sued as a participant for breach of fiduciary duty under ERISA Section 502(a)(1)(A), the Third Circuit held that the plaintiff's status was measured at the time the breach of fiduciary duty occurred, rather than the time of the appeal. Daniels v. Thomas & Betts Corp., 263 F.3d 66, 78 (3d Cir. 2001). The plaintiff should not be barred from bringing suit at a later date where she "had no reason to believe that events would happen in the future which would entitle her to a benefit, i.e., that she would 'become entitled' at some future date." Id. Furthermore, the Third Circuit interpreted the phrase "entitled to a benefit" to mean that the plaintiff had to demonstrate that she had a "'colorable claim'" for the benefit, but not a "meritorious claim." Id. at 79 (citing Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 117 (1989)). Thus, the plaintiff in Daniels, who based her breach of fiduciary duty claim on a request for plan documents, and who was "entitled to a benefit" at the time of that request, had statutory standing as an ERISA beneficiary. Id.

The Third Circuit has "held that ERISA's legislative history indicates that its standing requirements should be construed broadly to allow employees to enforce their rights." Graden, 496 F.3d at 291 (citing Leuthner, 454 F.3d at 128). In particular, the Court's approach to statutory standing is more generous to the plaintiff in cases where the plaintiff's standing may be affected by the merits of the breach of fiduciary duty claim alleged. See Leuthner, 454 F.3d at 129 (stating in dicta that "in the proper case, we may find that a plaintiff has statutory standing if the plaintiff can in good faith plead that she was an ERISA plan participant or beneficiary and that she still would be but for the alleged malfeasance of a plan fiduciary") (emphasis added). In Graden, the Third Circuit held that a former employee who had cashed out his benefits account was nevertheless a "participant" for purposes of standing, where the account was diminished by

alleged fiduciary impropriety that was not remedied at the time he received the benefits. 496

F.3d at 302. The Court held that the relevant inquiry to determine whether a participant had

statutory standing under ERISA is "whether the plaintiff alleges that his benefit payment was

deficient on the day it was paid under the terms of the plan and the statute." Id. at 303.

Defendant further disputes that Plaintiff is entitled to any "benefit" under ERISA, given

that Plaintiff cashed out her SecureLine account, which contained the $10,000 life insurance

proceeds and interest paid in accordance with the account's terms and conditions. However, the

Third Circuit has held that equitable relief is a "benefit" for purposes of standing. Leuthner, 454

F.3d at 127-28. Moreover, the Third Circuit has implicitly found that beneficiaries have standing

to assert claims for equitable relief even after collecting all of the benefits to which they were

entitled under the plan. For example, in Fotta v. Trustees of United Mine Workers of America,

Health & Retirement Fund of 1974, 165 F.3d 209 (3d Cir. 1998), the Court held that an ERISA

beneficiary could bring an action under Section 502(a)(3)(B) for interest owed on delayed

benefits payments, even though he had already received the benefit payments on which his claim

was based. Id. at 214. Other Courts of Appeals have explicitly acknowledged that an ERISA

plaintiff has standing to sue for the equitable remedy of a constructive trust. In Amalgamated

Clothing & Textile Workers Union, AFL-CIO v. Murdock, 861 F.2d 1406 (9th Cir. 1988), the

Ninth Circuit held that beneficiaries seeking a constructive trust for disgorgement of "alleged ill-

gotten profits" had statutory standing to bring claims for breach of fiduciary duty under ERISA.

Id. at 1417. See also Clair v. Harris Trust & Sav. Bank, 190 F.3d 495, 498 (7th Cir. 1999)

(participant has standing to sue for constructive trust under ERISA to redress plan violations).

Similarly, in Vander Luitgaren, the district court held that the plaintiff, who had already received

the death benefits to which he was entitled under the plan when he sued for the interest retained by the fiduciary, was nevertheless a beneficiary because he alleged a colorable claim for disgorgement of the interest on the funds that the fiduciary managed for his exclusive benefit. 2010 WL 4722269 at *1 (finding that plaintiff sufficiently alleged statutory standing).

This Court follows the Third Circuit's instruction in Graden that the ERISA statutory standing requirements should be construed broadly. Plaintiff should not be prohibited from bringing a claim as an ERISA beneficiary even though she has cashed out her benefits and closed her SecureLine account. There is no evidence that Plaintiff knew at the time that the alleged breach of fiduciary duty was occurring. Like the plaintiff in Daniels, Plaintiff should not be prohibiting from suing now that she has discovered the breach. Although the Third Circuit has not explicitly ruled on the issue, its holding in Graden–that a plaintiff's status as a "participant" should be measured as of the time the injury or breach occurred–can easily be applied to a "beneficiary." If the plaintiff alleges that as of the day she received the benefits to which she was entitled, those benefits were diminished by the fiduciary's impropriety and not remedied at the time of disbursement, that is sufficient for statutory standing as a beneficiary.

Here, Plaintiff alleges that the value of her benefits in the SecureLine Account was diminished because Defendant improperly retained the "spread," or the difference between the interest that Defendant earned on the benefits and the interest that Plaintiff received. That diminution was not remedied at the time when Plaintiff cashed out her account. Consistent with the Third Circuit's ruling in Graden, Plaintiff should not be denied standing, because she has alleged that she was a beneficiary when the breach occurred. Additionally, Plaintiff alleged that the remedy she seeks is disgorgement of the ill-gotten profits from the fiduciary by means of a

constructive trust. This Court agrees with those courts that have found the equitable remedy of a constructive trust to be a benefit for purposes of statutory standing. Consequently, the Court finds that Plaintiff has alleged statutory standing under ERISA as well as Article III standing.

The Court's conclusion that Plaintiff has standing is consistent with the liberal approach of the Third Circuit to challenges to subject matter jurisdiction. Plaintiff's claim neither "clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction" nor is "wholly insubstantial and frivolous." Gould Elecs. Inc. v. United States, 220 F.3d 169, 178 (3d Cir. 2000). Accordingly, the Court will deny the motion to dismiss under Rule 12(b)(1).

**B.     Fiduciary Duty**

The Court now examines whether Plaintiff's Complaint states a claim for breach of fiduciary duty under ERISA. Specifically, Plaintiff alleges that Defendant violated its fiduciary duty under ERISA Section 404(a), which requires a fiduciary to "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and their beneficiaries." 29 U.S.C. § 1104(a)(1)(A)(i). Plaintiff also alleges that Defendant violated ERISA Section 406(b), which states: "A fiduciary with respect to a plan shall not deal with the assets of the plan in his own interest or for his own account." 29 U.S.C. § 1106(b)(1). To successfully state a claim for breach of fiduciary duty under these provisions, the complaint must contain factual allegations that the Defendant was a fiduciary within the meaning of the statute.

*1.     Mixed Question of Fact and Law*

As a threshold issue, the parties dispute whether this Court can resolve Lincoln's fiduciary status purely as a matter of law. Plaintiff contends that the issue is a mixed question of

law and fact.  Defendant implicitly acknowledges this, but contends that there are no disputed

facts relating to fiduciary status, which allows the Court to decide the issue as a matter of law.

Although neither the Supreme Court nor the Third Circuit has explicitly stated, many

courts have held that the determination whether a person is acting as a fiduciary with respect to a

plan under ERISA is a mixed question of fact and law.  See, e.g., David P. Coldesina, D.D.S. v.

Estate of Simper, 407 F.3d 1126, 1131 (10th Cir. 2005); Cotton v. Mass. Mut. Life Ins. Co., 402

F.3d 1267, 1277 (11th Cir. 2005); Hamilton v. Carell, 243 F.3d 992, 997 (6th Cir. 2001); Reich

v. Lancaster, 55 F.3d 1034, 1044 (5th Cir. 1995).  See also Pegram v. Herdrich, 530 U.S. 211,

218 (2000) (court's determination whether mixed eligibility decisions by HMO physicians

conferred fiduciary status under ERISA depended on analysis of fact and law).  The

determination whether benefits at issue are "plan assets"–a component of the inquiry into

whether a purported fiduciary owes a duty with respect to the complained-of conduct–is also a

mixed question of fact and law.  Phones Plus, Inc. v. Hartford Fin. Servs. Grp., Inc., No. Civ.

3:06CV01835(AVC), 2007 WL 3124733, at *5 (D. Conn. Oct. 23, 2007) (Covello, J.).

Where there are no disputes of fact regarding the defendant's actions, the determination

whether the defendant is an ERISA fiduciary is a question of law.  Srein v. Frankford Trust Co.,

323 F.3d 214, 220 (3d Cir. 2003).  In Srein, the parties did not dispute the factual findings

regarding the defendant trustee bank's actions and agreements in relation to the plan, but

disputed whether those actions and agreements bestowed fiduciary status.  Id.  The Third Circuit

found that the defendant was not acting as a "mere custodian of plan assets," but rather

performed "duties to 'control, manage, hold, safeguard and account for [a] fund's assets and

income,'" which fit the definition of an ERISA fiduciary.  Id. at 223 (alteration in original)

(quoting <u>Bd. of Trs. of Bricklayers & Allied Craftsmen Local 6 of N.J. Welfare Fund v. Wettlin</u> <u>Assocs. Inc.</u>, 237 F.3d 270, 275 (3d Cir. 2001) (hereinafter "<u>Wettlin</u>")). Because the undisputed facts in <u>Srein</u> established that the defendant was a fiduciary with respect to a particular investment, the Third Circuit held that the district court erred in granting judgment to the defendant on that claim. <u>Id.</u> A court may also consider whether the plan documents reflect a clear intent that a person was intended to be a fiduciary with respect to certain functions. <u>See</u> <u>Ream v. Fray</u>, 107 F.3d 147, 151 (3d Cir. 1997) (where the plan document described the role of the trustee in the same terms that Section 1104(a)(1)(B) used to describe fiduciary duties, that was a clear signal of intent that the trustee was a fiduciary).

However, if the parties dispute the facts that establish the defendant's fiduciary status, including whether the defendant had authority and control over the management and disposition of plan assets, then the issue should not be resolved at the motion to dismiss stage. <u>Wettlin</u>, 237 F.3d at 275. In <u>Wettlin</u>, the Third Circuit reversed the district court's grant of a motion to dismiss a breach of fiduciary duty claim, explaining that "further [factual] development is required and on this record we cannot say that, as a matter of law, Wettlin is not a fiduciary." <u>Id.</u>

In this case, the Court does not agree with Defendant's contention that there is no dispute of fact as to its fiduciary status. For example, Plaintiff alleges that when a beneficiary makes a death benefit claim for $5000 or more, Defendant informs the beneficiary that it has established a SecureLine account in the beneficiary's name containing the life insurance proceeds, but that Defendant does not actually deposit any funds into the account until the beneficiary draws a draft, meanwhile retaining and investing the benefits. Compl. ¶¶ 10-12. The conduct that Plaintiff alleges contradicts the Terms and Conditions of the SecureLine account. Yet Defendant

contends that it has compiled with the express terms of the plan, even suggesting that it cannot be liable for a breach of fiduciary duty for that reason. Where the benefits are held, and the level of control Defendant exercises over benefits before the beneficiary cashes out the SecureLine account, are key factual inquiries in determining Defendant's fiduciary status. Because there are unresolved factual disputes, the Court treats the question of whether Defendant was a fiduciary as a mixed question of fact and law.

### 2. ERISA "Fiduciary" Definition

ERISA defines "fiduciary" in relevant part in Section 3(21)(A):

> [A] person[8] is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, . . .or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A). Unlike a common law trustee, an ERISA fiduciary is defined "in functional terms of control and authority over the plan." Mertens v. Hewitt Assocs., 508 U.S. 248, 262 (1993) (citing 29 U.S.C. § 1002(21)(A)). A person is only liable for a breach of fiduciary duty if he was "acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint." Pegram, 530 U.S. at 226.

Because Congress intended for ERISA to provide broad protection of retirement benefits, courts broadly construe the term "fiduciary." John Hancock Mut. Life Ins. Co. v. Harris Trust & Sav. Bank, 510 U.S. 86, 96 (1993) (hereinafter "Harris Trust"). See also Curcio v. John Hancock Mut. Life Ins. Co., 33 F.3d 226, 233 (3d Cir. 1994) (citing Smith v. Hartford Ins. Grp., 6 F.3d

---

[8] ERISA defines "person" as an "individual, partnership, joint venture, corporation, mutual company, joint-stock company, trust, estate, unincorporated organization, association, or employee organization." 29 U.S.C. § 1002(9).

131, 141 n.13 (3d Cir. 1993)) ("We start from the standpoint that we have previously held that ERISA broadly defines a fiduciary.").

The Third Circuit has stated that "the linchpin of fiduciary status under ERISA is discretion." Curcio, 33 F.3d at 233. Fiduciary obligations do not attach to non-discretionary, "purely ministerial functions" involved in administration or management of a plan. 29 C.F.R. § 2509.75-8, at D-2. For example, calculation of the amount of benefits in accordance with a formula is a ministerial function, whereas the exercise of "final authority to authorize or disallow benefit payments in cases where a dispute exists as to the interpretation of plan provisions relating to eligibility for benefits" is a discretionary function. 29 C.F.R. § 2509.75-8, at D-3.[9] See, e.g., Confer v. Custom Eng'g Co., 952 F.2d 34, 39 (3d Cir. 1991) (plan supervisor with no discretion to allow or deny claims, no authority to alter the written plan, and duty to follow instructions of plan administrator, "perform[ed] purely ministerial tasks" and was not an ERISA fiduciary).

---

[9] The Department of Labor regulations provide an extensive list of "purely ministerial functions" that do not confer fiduciary status on the actor:
(1) Application of rules determining eligibility for participation or benefits;
(2) Calculation of services and compensation credits for benefits;
(3) Preparation of employee communications material;
(4) Maintenance of participants' service and employment records;
(5) Preparation of reports required by government agencies;
(6) Calculation of benefits;
(7) Orientation of new participants and advising participants of their rights and options under the plan;
(8) Collection of contributions and application of contributions as provided in the plan;
(9) Preparation of reports concerning participants benefits;
(10) Processing of claims; and
(11) Making recommendations to others for decisions with respect to plan administration.
29 CFR § 2509.75-8.

However, fiduciary status does not hinge on the exercise of discretion in some cases. Congress used the term "discretionary" when referring to authority or control over management or administration of the plan itself, but omitted the term with respect to "exercis[ing] <u>any</u> authority or control" over the management or disposition of plan assets. 29 U.S.C. § 1002(21)(A)(i) (emphasis added). This careful parsing of the definition reflects that Congress did not require a fiduciary to exercise discretion over participants' and beneficiaries' assets, but instead fiduciary duties automatically attach to control of assets. <u>Wettlin</u>, 237 F.3d at 273-74; <u>see also</u> <u>Coldesina</u>, 407 F.3d at 1132 ("In Congress's judgment, and consistent with general trust law, parties controlling plan assets are <u>automatically</u> in a position of confidence by virtue of that control, and as such they are obligated to act accordingly."); <u>IT Corp. v. Gen. Am. Life Ins. Co.</u>, 107 F.3d 1415, 1421 (9th Cir. 1997) (discussing how "[t]he statute treats control over the cash differently from control over administration," in order to "assur[e] that people who have practical control over an ERISA plan's money have fiduciary responsibility to the plan's beneficiaries.").

In this case, Plaintiff's breach of fiduciary duty claim is based on facts relating to Defendant's management or disposition of plan assets. Therefore, Defendant's argument that it "could not possibly have exercised discretionary authority" over the benefits, Def.'s Mem. Law at 21, is unavailing. Differentiating between discretionary and ministerial functions is unnecessary where the crux of the analysis is whether Defendant exercised "any authority or control" over "plan assets." Each of these terms needs to be analyzed, while bearing in mind the Supreme Court's mandate that courts broadly construe the term "fiduciary."

     a.       *"Authority or Control"*

Courts that have interpreted the terms "any authority or control" have concluded that

having physical possession of plan assets is insufficient to incur fiduciary duties, but having practical control of plan assets is sufficient. In IT Corp., the Ninth Circuit distinguished a bank-depositor relationship, where the bank does not have the power to dispose of the money, from a participant-plan administrator relationship, where the administrator has "practical control" over plan assets. IT Corp., 107 F.3d at 1421-22 (holding that insurer was a fiduciary because it had control of plan assets, evident from its authority to dispose of plan assets by writing checks on plan funds); see also Chao v. Day, 436 F.3d 234, 237-38 (D.C. Cir. 2006) (distinguishing a "mere custodian" of plan assets, who would not qualify as a fiduciary, from the defendant, who had "solicited, accepted, and then pilfered the plans' assets"); Coldesina, 407 F.3d at 1133 (defendants, who "were signatories in practice as well as name" of the account that held the plan funds, had control over plan assets and qualified as fiduciaries).

There are a handful of cases that have examined the question whether an insurance company acts as a fiduciary when managing plan assets that have been awarded to beneficiaries but are held in individual retained asset accounts. Plaintiff relies on Mogel v. UNUM Life Insurance Co. of America, 547 F.3d 23 (1st Cir. 2008), for the proposition that the insurer owes a fiduciary duty in connection with the retained asset account. In Mogel, as in this case, the plaintiff beneficiaries alleged that the defendant insurance company paid death benefits by establishing individual "Security Accounts" in their names and issuing checkbooks from which they could write checks to draw down the account. Id. at 25. The beneficiaries received interest on the account at a variable rate, but plaintiffs alleged that the company retained additional interest on the benefits in the retained asset accounts. Id. The First Circuit determined that the insurer, UNUM, "had possession of [the funds] and enjoyed their use" while the funds were in

the Security Accounts, and therefore UNUM was acting as a fiduciary.  Id. at 26 (citing

Commonwealth Edison Co. v. Vega, 174 F.3d 870, 872-73 (7th Cir. 1999)).

Defendant in this case argues that once Plaintiff's SecureLine account was established, no

one but Plaintiff had access to the benefits.  Defendant relies on Faber v. Metropolitan Life Ins.

Co., No. 08 Civ. 10588(HB), 2009 WL 3415369 (S.D.N.Y. Oct. 23, 2009) (Baer, J.), which held

that the defendant insurance company discharged its fiduciary duty to the beneficiaries once it

established individual retained asset accounts called "total control accounts" ("TCAs")

containing the allowed death benefits, and provided each beneficiary with a checkbook to access

the funds in his or her account.  Id. at *7-8.  Faber distinguished Mogel, where the ERISA plan at

issue explicitly required that benefits be paid by lump sum (rather than by use of a retained asset

account).  Id. at *7 n.7 (citing Mogel, 547 F.3d at 26).[10]  Defendant highlights this distinction

because lump sum payment was not a condition of the plan in this case.

However, in Vander Luitgaren v. Sun Life Insurance Co. of Canada, No. 1:09-cv-11410,

2010 WL 4722269 (D. Mass. Nov. 18, 2010) (Gertner, J.), which applied Mogel to a plan that

did not require a lump sum payment, the court rejected the insurer's argument that establishing

the retained asset account discharged its fiduciary duties.  Id. at *1.  The court explained that

_____

[10] Faber is pending on appeal before the Second Circuit, which invited the Secretary of
the Department of Labor to file an amicus curiae letter brief.  The parties in this case have put the
Department of Labor's brief before the Court in letters dated February 24, 2011 (Plaintiff) and
February 25, 2011 (Defendant).  The Department of Labor reached the following three
conclusions: 1) the guaranteed benefit policy exemption does not apply to the TCAs; 2) fiduciary
duties to the beneficiaries terminate once the TCAs are established in compliance with the plan
terms; and 3) the assets that back the TCAs are not "plan assets."  Letter from U.S. Department
of Labor to the Court of Appeals for the Second Circuit in Faber v. Metro. Life Ins. Co., Case
No. 09-4901 (Feb. 17, 2011).  The Court takes note of these conclusions but does not find them
to be determinative as to whether Plaintiff has sufficiently stated a claim for an ERISA violation
in this case.

discharging the fiduciary duty while the beneficiary's money was held by the insurer would be inconsistent with ERISA's purpose "to prevent and punish behavior by administrators that was likely to injure the plan and its beneficiaries." Id. Judge Gertner analogized the establishment of an individual retained asset account to a delay in payment by the insurer, and concluded that "fiduciary duties are active until the money is fully withdrawn from the individual retained asset accounts." Id.

As in Faber, the plan documents in this case specifically contemplate payment of allowed death benefit claims for $5,000 or more by the establishment of individual retained asset accounts. Death benefit claim, Compl. Ex. A ("If the amount payable to you is $5,000 or more, our usual method of payment is to open a SecureLine Account, which gives you compete control of your funds. If the amount is below $5,000, you will be paid with a single check.") Therefore, unlike the insurer in Mogel, Defendant has, at the very least, complied with the plan documents in its choice of payment method.

However, Defendant conflates compliance with the plan documents and compliance with the statutory requirements of ERISA. In the absence of Third Circuit precedent, this Court finds Vander Luitgaren rather than Faber to be a more faithful reflection of the Supreme Court's instruction in Harris Trust to broadly construe the term "fiduciary." Judge Gertner's conclusion that an insurer's fiduciary duty extends until the point when the insurer no longer exercises authority or control over the assets aptly reflects the protective purpose of ERISA. This legal conclusion requires denial of the Motion to Dismiss, but is subject to change if discovery warrants a different result.

Here, assuming that the life insurance benefits and the interest earned on those benefits

were plan assets (as discussed below), Plaintiff has sufficiently alleged that Defendant exercised practical control over those assets. Plaintiff alleges that Defendant controlled the establishment of SecureLine accounts, determined when to move the benefits into the SecureLine accounts, invested the benefits, and determined whether to pay the beneficiaries the total earnings from the investment of their benefits. These actions reflect more than mere custodianship or possession of the funds. Although the relationship between Plaintiff and Defendant vis-a-vis the SecureLine account has the trappings of an ordinary depositor-banker relationship, such as the checkbook Defendant issued to Plaintiff to withdraw her funds, appearances do not remove the relationship from the ERISA context. At the very least, there are questions of fact as to whether Defendant relinquished authority and control of the funds when it established the SecureLine account and when it actually moved the benefits into the account. Given that Defendant was acting as a fiduciary, the next question is whether Defendant was dealing in plan assets.

b.      *"Plan Assets"*

Fiduciary obligations attach to the management of "plan assets." Assets that are not "plan assets" within the meaning of ERISA are exempt from claims of fiduciary liability. However, there is no definition of "plan assets" in the ERISA statute. Regulations define "plan assets" only in the context of plan investments in another entity and participant contributions, neither of which is relevant to this case. 29 C.F.R. §§ 2510.3-101, 2510.3-102. In an advisory opinion, the Department of Labor explained that absent an applicable regulation, "plan assets" are defined according to "'ordinary notions of property rights under non-ERISA law,'" which "'include any property, tangible or intangible, in which the plan has a beneficial ownership interest.'" In re Halpin, 566 F.3d 286, 289 (2d Cir. 2009) (quoting U.S. Dep't of Labor, Advisory Op. No.

93-14A, 1993 WL 188473, at *4 (May 5, 1993)); <u>accord</u> <u>In re Luna</u>, 406 F.3d 1192, 1199 (10th

Cir. 2005).

Although the ERISA statute leaves undefined the phrase "plan assets," Section 401(b)(2)

clearly carves out certain assets that are <u>not</u> "plan assets":

> In the case of a plan to which a guaranteed benefit policy is issued by an insurer, the assets of such plan shall be deemed to include such policy, but shall not, solely by reason of the issuance of such policy, be deemed to include any assets of such insurer.

29 U.S.C. § 1101(b)(2). ERISA further defines "guaranteed benefit policy:"

> The term 'guaranteed benefit policy' means an insurance policy or contract to the extent that such policy or contract provides for benefits the amount of which is guaranteed by the insurer. Such term includes any surplus in a separate account, but excludes any other portion of a separate account.

29 U.S.C. § 1101(b)(2)(B).

The term "guaranteed benefit policy" is not a term of art in the insurance industry, but

rather "a statutory invention placed in ERISA." <u>John Hancock Mut. Life Ins. Co. v. Harris Trust</u>

<u>& Sav. Bank</u>, 510 U.S. 86, 90 (1993). The purpose of the exemption is to protect insurance

companies from fiduciary liability where they owe duties not only to ERISA participants and

beneficiaries but also to parties such as policy holders, shareholders, and creditors, in operating

their general accounts. <u>Trs. of Laborers' Local No.72 Pension Fund v. Nationwide Life Ins. Co.</u>,

783 F. Supp. 899, 904 n.7 (D.N.J. 1992) (quoting Stephen H. Goldberg & Melvin S. Altman, <u>The</u>

<u>Case for the Nonapplication of ERISA to Insurers' General Account Assets</u>, 21 Tort & Ins. L. J.

475, 476-77 (1986)); <u>see also</u> <u>Trs. of the S. Cal. Bakery Drivers Sec. Fund v. Middleton</u>, 474

F.3d 642, 646 (9th Cir. 2007) (explaining that "the policy behind the exemption reflects ERISA's

historic deference to state insurance law").

In Harris Trust, the Supreme Court examined the scope of the guaranteed benefit policy exemption and determined that it was "markedly confined." 510 U.S. at 96. The Court noted that Congress did not pass a proposal that would have exempted all funds held by an insurer in its general account from fiduciary liability under ERISA. Id. at 100-01, 101 n.12. Harris Trust resolved a circuit split on how narrowly to interpret the exemption.[11] The Supreme Court followed the Seventh Circuit's approach in Peoria Union of "division of the contract into its component parts and examination of risk allocation in each component." Id. at 102. In the Harris Trust framework, "[a] contract component that provides for something other than guaranteed payments to plan participants or beneficiaries--e.g., a guaranteed return to the plan--does not, without more, provide for guaranteed benefits and thus does not fall within the statutory exclusion." Id. at 105. To fall within the exemption, the contract component must "allocate[ ] investment risk to the insurer." Id. at 106. Applying the exemption in this restricted manner was consistent with the principle of statutory interpretation that courts should read exemptions to comprehensive statutory schemes narrowly. Id. at 97.

In Harris Trust, the Supreme Court explained that "Congress has specifically instructed, by the words of limitation it used, that we closely contain the guaranteed benefit policy exclusion." Id. at 97. The Supreme Court held that although the insurer commingled deposits by

---

[11] In Peoria Union Stock Yards Co. Retirement Plan v. Penn Mutual Life Ins. Co., 698 F.2d 320 (7th Cir. 1983), the Seventh Circuit held that the proper approach was to examine each stage of an insurance contract, such as accumulation and annuity payment, to determine whether the exemption applied. Id. at 327. By contrast, in Mack Boring and Parts v. Meeker Sharkey Moffitt, Actuarial Consultants of New Jersey, 930 F.2d 267 (3d Cir. 1991), the Third Circuit held that if plan funds were deposited in the insurer's general account, and the policy at issue provided guaranteed benefits, then no ERISA fiduciary duties applied to those funds. Id. at 277.

participants with other assets in its general corporate account, from which it paid guaranteed benefits to retirees, the exemption applied only in part.  Id. at 106.  Any "funds in excess of those that have been converted into guaranteed benefits" were "plan assets" subject to fiduciary duties under ERISA.  Id.  District courts applying the exemption have recognized the "narrow language of the guarantee benefit policy exclusion."  Rapides Reg'l Med. Ctr. v. Am. United Life Ins. Co., 938 F. Supp. 380, 389 (W.D. La. 1996) (Little, J.) (a group annuity contract, where the insurer purportedly guaranteed the minimum interest rate and minimum annuity purchase rate, was not a "guaranteed benefit" because the insurer retained the power to amend the contract); Moreland v. Behl, No. C-92-1238 MHP, 1996 WL 193843, at *6-7 (N.D. Cal. Apr. 17, 1996) (Patel, J.) (a pre-conversion life insurance policy, "issued at a fixed face value," where the assets were held in a "non-segregated general investment account," "appears to satisfy the requirements of the guaranteed benefits policy exclusion," but "[w]hether the excess funds portion of the contract qualifies for the guaranteed benefit exception remains a question of fact for trial").

The cases addressing retained asset accounts are internally consistent in their conclusions whether the benefits at issue are "plan assets" and whether the defendant is a "fiduciary."  In Mogel, the First Circuit held that "the sums due plaintiffs remain plan assets subject to UNUM's fiduciary obligations until actual payment," including while the benefits are held in the retained asset accounts.  Mogel, 547 F.3d at 27.  The court also determined that the guaranteed benefit policy exemption had no application to the component of the plan where the insurance company actually makes payments to beneficiaries.  See id.  See also Vander Luitgaren, 2010 WL 4722269, at *1 (finding sufficient the allegation that "[i]f the Financial Benefit Accounts were plan funds, and [Plaintiff] was entitled to have those funds managed for his exclusive benefit,

then he may argue he is still entitled to the amount that Sun Life made from his assets over and above the interest i[t] paid him").  On the other hand, in <u>Faber</u>, the court did not address whether the guaranteed benefit policy exemption applied, but implicitly found that benefits were no longer "plan assets" after establishment of the individual retained asset accounts.  See <u>Faber</u>, 2009 WL 3415369 at *7-8.

The Group Insurance Policy in this case guaranteed the amount of benefits to be awarded a beneficiary upon death of a participant.  <u>See</u> Def.'s Mot. Dismiss Ex. 1.  Nevertheless, the guaranteed benefit exemption does not apply in this case.  Following the instructions in <u>Harris Trust</u> to apply the guaranteed benefit policy exemption narrowly and only to the particular component of the contract at issue, the Court evaluates only the SecureLine account, which is the component of the contract addressing the <u>method</u> of payment of benefits.[12]  Although Plaintiff alleges that Defendant does not put money in a beneficiary's SecureLine account until after it receives the beneficiary's check drawing on the account, she has not alleged, nor do the documents before the Court show, that the benefits at issue are commingled with assets in Defendant's general account.  <u>Cf.</u> <u>Adkins v. John Hancock Mut. Life Ins. Co.</u>, 957 F. Supp. 211, 213-14 (M.D. Fla. 1997) (Schlesinger, J.) (dismissing breach of fiduciary duty claim in part because plan documents integral to the complaint established that pension funds at issue were commingled with assets in the insurer's general account).  Therefore, the exemption does not apply.

---

[12] The Supreme Court's directive to narrowly construe the guaranteed benefit exemption stands in contrasts to the directive to broadly construe the definition of an ERISA "fiduciary," discussed above.

Because the one clear "carve out" from the definition of "plan assets" does not apply, the Court must look to property law to determine whether the benefits at issue are "plan assets." Cases that have applied common law principles in the ERISA context typically determine when funds become plan assets. Here, however, Defendant argues that the benefits cease to be plan assets after establishment of a SecureLine account. In re Halpin, 566 F.3d 286 (2d Cir. 2009), the Second Circuit applied "ordinary notions of property rights" and held that an ERISA plan has a property interest in paid employer contributions but not in unpaid, contractually owed contributions. Id. at 290. In re Luna, 406 F.3d 1192 (10th Cir. 2005), the Tenth Circuit held that in addition to having a present interest in paid contributions, "the plan holds a future interest in the collection of the contractually-owed contributions." Id. at 1199. The Third Circuit has not ruled on the meaning of "plan assets" under ERISA in light of common law principles.

When Defendant establishes a SecureLine account, the beneficiary has either a present property interest or a future property interest in the benefits and interest earned. The factual issue of whether the benefits are actually put into the SecureLine account for the beneficiary's immediate use, or whether they are not moved into the account until the beneficiary draws a draft on the account, prevents the Court from deciding this as a matter of law. Therefore, drawing inferences in favor of Plaintiff, the Court finds that Plaintiff has sufficiently alleged that the benefits at issue are plan assets.

### C.    Equitable Relief

The Court briefly addresses Defendant's remaining argument that Plaintiff cannot seek disgorgement under the equitable relief provision of ERISA, Section 502(a)(3). Defendant points to Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204 (2002) for the

34

proposition that disgorgement can be equitable or legal in nature. Id. at 213. Disgorgement is a

legal remedy where the plaintiff cannot assert title or right to possessing particular property. Id.

However, when the plaintiff seeks "a constructive trust or an equitable lien, where money or

property identified as belonging in good conscience to the plaintiff could clearly be traced to

particular funds or property in the defendant's possession," disgorgement is an equitable remedy.

Id. The Supreme Court explained that the purpose of equitable restitution is "not to impose

personal liability on the defendant, but to restore to the plaintiff particular funds or property in

the defendant's possession." Id. at 214. The Third Circuit has applied this principle in the

ERISA context.[13] In Fotta v. Trustees of United Mine Workers of America, Health & Retirement

Fund of 1974, 165 F.3d 209 (3d Cir. 1998), the Third Circuit held that a beneficiary could seek

interest on delayed benefits payments under Section 502(a)(3)(B), which allows a plaintiff to

bring an action for "other appropriate equitable relief" for the purpose of redressing violations of

ERISA. Id. at 214. In reversing the district court's grant of the motion to dismiss this claim, the

Third Circuit explained that allowing the claim to go forward would "effectuate ERISA's

objectives by recognizing, under principles of equity, that beneficiaries should be fully

compensated and that any unjust enrichment of plans at beneficiaries' expense should be

avoided." A plaintiff may sufficiently state a claim for equitable relief by means of a

constructive trust by tracing the funds to the ERISA plan that held the benefits. Skretvedt v. E.I.

DuPont De Nemours, 372 F.3d 193, 214 (3d Cir. 2004) (finding that the plaintiff "sufficiently

identified specific funds traceable" by naming "the ERISA plans that withheld [plaintiff]'s

---

[13] Several ERISA cases involving equitable remedies were discussed above in relation to
statutory standing. See section V.A.2., supra.

benefits for several years and profited with respect to the withholding of those benefits").

Here, Plaintiff, consistent with <u>Great-West</u>, seeks a constructive trust to disgorge the unpaid interest that she alleges Defendant earned on the benefits in her SecureLine account. As in <u>Fotta</u>, Plaintiff seeks to disgorge interest owed to her from the plan. As the plaintiff in <u>Skretvedt</u>, Plaintiff has identified the ERISA plan in which her benefits were held as the source of the funds. Thus, Defendant's argument that Plaintiff cannot pursue the remedy of disgorgement under Section 502(a)(3) fails.[14]

## VI.    Conclusion

Plaintiff has sufficiently alleged a claim for breach of fiduciary duty under ERISA. Plaintiff has standing under Article III of the Constitution and under ERISA to assert this claim. Therefore, Defendant's motion to dismiss will be denied. An appropriate Order follows.

---

[14] Defendant also argues in brief that there is an "[i]njury to the plan" requirement under 29 U.S.C. § 1106(b)(1). For support, Defendant cites <u>Lockheed Corp. v. Spink</u>, 517 U.S. 882, 888 (1996) (explaining that "Congress enacted § 406 'to bar categorically a transaction that [is] likely to injure the pension plan.'") (alteration in original) (quoting <u>Comm'r of Internal Revenue v. Keystone Consol. Indus., Inc.</u> 508 U.S. 152, 159 (1993)). Injury to the plan is discussed in the context of legislative intent, not elements of an ERISA claim. <u>Lockheed</u> only addressed 29 U.S.C. § 1106(a). 29 U.S.C. § 1106(b)(1) states: "A fiduciary with respect to a plan shall not--(1) deal with the assets of the plan in his own interest or for his own account." The Court concluded above that Plaintiff sufficiently alleged that the benefits at issue were "plan assets." Self-dealing in plan assets is a transaction likely to injure the value of the pension plan. Defendant's final argument does not change the Court's analysis.